**EXHIBIT**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JEFFREY HART, *et al.*, | ) |
| Plaintiffs, | ) |
| and | ) [PROPOSED] |
| | ) COMPLAINT IN |
| ANJAN RAU and KANCHAN KATAPADI, as guardians and on behalf of their children, and on behalf of a class of all others similarly situated, | ) INTERVENTION |
| | ) Civ. No. 72-1041-JBW |
| Intervening Plaintiffs, | ) |
| -against- | ) |
| THE COMMUNITY SCHOOL BOARD OF BROOKLYN, NEW YORK SCHOOL DISTRICT #21, *et al.*, | ) |
| Defendants. | ) |
| THE COMMUNITY SCHOOL BOARD OF BROOKLYN, NEW YORK SCHOOL DISTRICT #21, by its President and Member, EVELYN J. AQUILA, and its Treasurer and Member, MARIAN NAGLER, and VINCENT J. FONTI, as a Member of the COMMUNITY SCHOOL BOARD OF BROOKLYN, NEW YORK SCHOOL DISTRICT #21, | ) |
| Defendants and Third Party Plaintiffs, | ) |
| -against- | ) |
| JOHN V. LINDSAY, Mayor of the City of New York, *et al.*, | ) |
| Third Party Defendants. | ) |

WAI-2859018v1

**COMPLAINT IN INTERVENTION
OF ANJAN RAU AND KANCHAN KATAPADI, AS GUARDIANS AND ON BEHALF
OF THEIR CHILDREN, AND ON BEHALF OF A CLASS OF ALL OTHERS
SIMILARLY SITUATED**

This complaint in intervention alleges discrimination in the admissions system for a specialized middle school for the gifted and talented, Mark Twain Intermediate School 239 ("Mark Twain"), operated by defendants. Admission to Mark Twain is by competition. Defendants discriminate against minorities by requiring them to meet a higher standard in order to be offered admission. Their conduct violates the Equal Protection Clause of the United States Constitution and 42 U.S.C. §§ 1983 and 2000d.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this case because the case involves alleged violations of the United States Constitution and federal laws protecting civil rights. *See* 42 U.S.C. §§ 1331, 1343(3).

2. Venue is proper in this Court because the actions complained of took place in this district.

**PARTIES**

3. Anjan Rau and Kanchan Katapadi ("Movants") are husband and wife. They are Asian Indian Americans. They have three children.

4. One of their children, Nikita, applied to Mark Twain in 2007. She was not offered admission despite a score on her admissions test that, had it been attained by a white child, would have resulted in that child's admission.

5. Another of their children intends to apply to the Mark Twain for the 2008-09 school year.

6. Defendant NYC Department of Education (the "Department"), the successor to Defendant Community School Board of Brooklyn, New York School District #21, operates the New York City school system. Defendant Joel Klein, the successor to Defendant Harvey Scribner, is the Chancellor of the Department and the official ultimately responsible for the Department's policies.

7. The Department divides New York City into various community school districts. Mark Twain is in Community School District No. 21. Defendant Richard D'Auria, the successor to Defendant Delores Chitraro, is the Community Superintendent of School District No. 21 in Brooklyn. D'Auria is responsible for operations of Mark Twain, and is responsible for the discriminatory conduct set forth below.

## FACTS

8. Mark Twain is a specialized school in District 21 for gifted and talented students in the 6th, 7th, and 8th grades. The school is operated by defendant Department of Education. Among other unique aspects of the school, Mark Twain offers special instruction in ten "talent" areas (*e.g.*, art, music, athletics) chosen by each individual student. Because of the quality of the students admitted and the high quality of instruction, students at Mark Twain have done very well on objective measures of educational attainment. For example, in 2007, nearly 90 students at Mark Twain received acceptance to Stuyvesant High School, a highly desirable specialized high school also operated by the Department for which admission is competitive and determined by a score on a separate admissions test.

9. Students currently in Grade 5 in any NYC public or private school may be considered for September 2007 admission. A certain percentage of the seats at Mark Twain are reserved for students from District 21.

10. Because of Mark Twain's special curriculum and quality of instruction, it is a highly desirable school to attend. More students apply each year than the school can accommodate.

11. Students apply for admission to Mark Twain during the year in which they are in fifth grade.

12. Children are admitted to the school on the basis of standardized test scores and Mark Twain's own tests in individual talent areas chosen by the applicant. Those who score above the required threshold on standardized test scores are allowed to take Mark Twain's test in the individual talent areas.

13. Students receive scores based upon their performance in their talent areas.

14. Mark Twain uses different cut-off scores in determining to whom to offer admissions in each talent area, depending upon an applicant's race and/or ethnicity. In 2007, for example, when Nikita Rau applied to Mark Twain, white students with a score of 77 or higher were offered admission in the "instrumental music" talent. Disfavored minorities had to score 84.4 or above to be offered admission in that talent.

15. Nikita Rau scored a 79 on the "instrumental music" talent portion of her entrance examination to Mark Twain in 2007. Because she is a member of a disfavored minority, she was not offered admission. Were it not for defendants' discriminatory policies, she would have been offered admission to Mark Twain for the school year beginning in September 2007.

16. Mark Twain uses differential cut-off scores in order to achieve an incoming class whose composition is 60% white and only 40% minority.

17. The composition of Mark Twain's student body as of January 2007 was 55% white.

18. Mark Twain first began to seek a class that is majority white in response to this lawsuit, *Hart v. Community School Board of Brooklyn*, Civ No. 72-1041, and an order from the Court therein in 1974, that ordered School District No. 21 to make Mark Twain a magnet school with a student body 70% white. *See Hart v. Cmty. Sch. Bd. of Brooklyn*, 383 F. Supp. 769 (E.D.N.Y. 1974).

19. Defendants have modified the goals initially set in the order over the course of time.

20. The 1974 *Hart* order was premised on a conclusion that School District No. 21 was unconstitutionally segregated even though the Court found, as a matter of fact, that school officials had no segregative or discriminatory intent. *See Hart*, 383 F.3d at 707, 721, 755.

21. Intervening Supreme Court precedent has held that discriminatory intent must be shown to establish a Fourteenth Amendment violation. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977).

22. This Court has continuing equitable jurisdiction to modify or vacate the prospective effect of its decrees when intervening changes of law or fact so require. *See, e.g.*, *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437 (1976).

23. Even assuming *arguendo* that School District No. 21 was unconstitutionally segregated in 1975, all of the vestiges of any past *de jure* discrimination have been eradicated.

24. Defendants have never sought to have School District No. 21 declared unitary so that it can be operated without federal court supervision.

25. Defendants have no compelling governmental interest in using separate cut-off scores for admissions to Mark Twain or for maintaining quotas on various races in the composition of the student body at Mark Twain.

26. Assuming *arguendo* that defendants had such a compelling governmental interest, the use of race in the system of admissions to Mark Twain is not narrowly tailored to achieve that compelling governmental interest.

27. If not enjoined, defendants will continue to discriminate on the basis of race in implementing the admissions policy at Mark Twain.

**CLASS ALLEGATIONS**

28. Movants seek to represent a class of intervening plaintiffs on their claim for forward-looking injunctive relief. The class consists of parents whose children will seek admission to Mark Twain in the future, and who are members of the minority racial groups that defendants treat unfavorably.

29. The class is so numerous as to make joinder impracticable. Upon information and belief, each year hundreds of minority students apply to Mark Twain. Moreover, joinder is particularly difficult because the class includes the parents of future applicants, all of whose identities cannot be known at this time.

30. Movants' claims have questions of law and fact in common with the claims of the class members.

31. Movants' claims are typical of the claims of the class.

32. Movants will adequately represent and protect the interests of the class. They have retained counsel familiar with this matter, and with class litigation in general.

33. Defendants have acted (and are acting) on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Accordingly, a class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

**INTERVENORS' CLAIM FOR RELIEF**

34. The allegations contained in paragraphs 1-33 are incorporated herein by reference.

35. Defendant Department is an agency of the municipality of New York, and its policies are adopted and implemented under color of state authority. Defendants Klein and D'Auria are agents of the Department, and their implementation of the admissions policies at Mark Twain is under color of state authority.

36. Defendant Department receives federal funds.

37. Defendants have adopted and implemented the admissions policy at Mark Twain.

38. The Department's adoption and implementation of a racially discriminatory admissions policy for Mark Twain violates the Equal Protection Clause of the United States Constitution and 42 U.S.C. §§ 1983 and 2000d, *et seq*. The adoption and/or implementation of Mark Twain's racially discriminatory admissions policy by Defendants Klein and D'Auria violate the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983.

THEREFORE, Movants seek judgment:

A. Declaring that the racially discriminatory admissions policy at Mark Twain violates the Equal Protection Clause of the United States Constitution and federal law;

B. Enjoining defendants from illegally discriminating on the basis of race in its admissions policy for Mark Twain;

C. Requiring defendants to extend to Nikita Rau an offer of admission into Mark Twain;

D. Modifying or vacating this Court's previous order in this case, which purportedly mandates the race-based quotas used by defendants to determine admission to Mark Twain;

E. Declaring that District No. 21 has eradicated all vestiges of any past *de jure* discrimination and should be deemed "unitary";

F. Awarding Movants their reasonable attorneys' fees, expenses, and costs; and

G. Ordering any other appropriate relief.

Respectfully submitted,

/s/
Michael E. Rosman
CENTER FOR INDIVIDUAL RIGHTS
Suite 300
1233 Twentieth Street, NW
Washington, DC 20036
202-833-8400

Michael A. Carvin
Shay Dvoretzky
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
202-879-3939

Rosemarie Arnold
LAW OFFICES OF ROSEMARIE ARNOLD
1386 Palisade Avenue
Fort Lee, NJ 07024
201-461-1111