UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

| | |
|---|---|
| JEFFREY HART, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| and ) | MEMORANDUM OF |
| ) | LAW IN SUPPORT OF |
| ANJAN RAU and KANCHAN KATAPADI, as guardians and ) | MOTION TO INTERVENE |
| on behalf of their children, and on behalf of a class of all others ) | |
| similarly situated, ) | |
| ) | |
| ) | Civ. No. 72-1041-JBW |
| Intervening Plaintiffs, ) | |
| ) | |
| -against- ) | |
| ) | |
| THE COMMUNITY SCHOOL BOARD OF BROOKLYN, ) | |
| NEW YORK SCHOOL DISTRICT #21, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

-------------------------------------------------------------------

| |
|---|
| ) |
| THE COMMUNITY SCHOOL BOARD OF BROOKLYN, ) |
| NEW YORK SCHOOL DISTRICT #21, by its President and ) |
| Member, EVELYN J. AQUILA, and its Treasurer and Member, ) |
| MARIAN NAGLER, and VINCENT J. FONTI, as a Member of ) |
| the COMMUNITY SCHOOL BOARD OF BROOKLYN, NEW ) |
| YORK SCHOOL DISTRICT #21, ) |
| ) |
| Defendants and Third Party Plaintiffs, ) |
| ) |
| -against- ) |
| ) |
| JOHN V. LINDSAY, Mayor of the City of New York, *et al.*, ) |
| ) |
| Third Party Defendants. ) |
| ) |

-------------------------------------------------------------------

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY ANJAN RAU AND KANCHAN KATAPADI, AS GUARDIANS AND ON BEHALF OF THEIR CHILDREN, AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED

## I. INTRODUCTION

Movants are the parents of minority children who have been, or will be, discriminated against on the basis of their race with respect to admissions to the Mark Twain Intermediate School 239 ("Mark Twain"). Mark Twain is subject to a desegregation decree entered by this Court in this civil action, and Movants believe that the Defendants will purport to rely on that decree as the basis for their current racially discriminatory admissions policy. Movants seek to intervene to challenge the legality of the Defendants' discriminatory policy and, by extension, the ongoing propriety of this Court's order. Because Movants have a significant, legally protected interest in freedom from unlawful racial discrimination in public-school admissions, and because the other requirements for intervention as of right are also satisfied, this Court should grant the motion to intervene. Alternatively, the Court should grant permissive intervention.

## II. STATEMENT OF FACTS

### A. Mark Twain's Racially Discriminatory Admissions Policy

Located in District 21 of the New York City school system, Mark Twain is a specialized public school for gifted and talented students in the 6th, 7th, and 8th grades. Among other unique aspects of the school, Mark Twain offers special instruction in ten "talent" areas (*e.g.*, art, music, athletics). The caliber of the students admitted to Mark Twain and the quality of instruction at the school are high; for example, in 2007, nearly 90 students at Mark Twain went on to be accepted to Stuyvesant, a highly desirable specialized public high school with a competitive admissions process. As a result, more students apply to Mark Twain each year than

can be accommodated, and admission is determined by competition.  Students apply to Mark Twain during the spring of their fifth-grade year.  Students are admitted on the basis of standardized test scores and Mark Twain's own tests in individual talent areas chosen by the applicant.

Movants Anjan Rau and Kanchan Katapadi are the parents of an Asian Indian American girl, Nikita Rau, who was denied admission to Mark Twain in 2007.  When her parents asked why Nikita had not been accepted to Mark Twain, the Defendants responded that they aim for each class at the school to be composed of 60% white students and 40% minority students; school officials classified Nikita as a minority.  In order to meet their target quota, the Defendants use different cut-off scores—favoring whites over minorities—in determining to whom to offer admission in each talent area.  For students entering the sixth grade in the 2007-08 school year, for example, white students with a score of 77 or higher were offered admission in the "instrumental music" talent, whereas disfavored minorities had to score 84.4 or above to be offered admission.  Nikita Rau's score of 79 thus exceeded the cut-off for white students, but was below the score required of minorities.  Were it not for Defendants' discriminatory policy, she would have been offered admission to Mark Twain for the school year beginning in September 2007.

Movants Rau and Katapadi also have another daughter who intends to apply to Mark Twain for the 2008-09 school year.  Without relief from this Court, her application will also be considered under discriminatory admissions standards that favor whites over minorities.

### B.    The History Of The *Hart* Litigation

In anticipation of Defendants' contention that their discriminatory policy is justified by the desegregation decree originally entered by this Court in this civil action over thirty years ago, a brief review of this litigation is thus necessary.

In 1974, this Court presided over a class action brought on behalf of students attending Mark Twain. The plaintiffs in that class action alleged that the defendant school board officials had unconstitutionally caused Mark Twain to be segregated by race. See *Hart v. Cmty. Sch. Bd. of Brooklyn*, 383 F. Supp. 699, 706 (E.D.N.Y. 1974). At the time, the school's enrollment was over 80% nonwhite even though the school district's student population was only approximately 30% nonwhite. See *id.* at 712-13. This Court concluded that the defendants made decisions knowing that the decisions would have segregative effects, and that they refused to take steps to alleviate those effects. See *id.* at 707; 754-55; see also *id.* at 715-21 (listing the defendants' actions and inactions). Although this Court found that "[t]he school officials cannot be charged with racial prejudice in their official positions or with segregative design or intent," *id.* at 721, it held that the lack of such discriminatory purpose was constitutionally immaterial and that the defendants' "benign neglect" was sufficient to violate the Equal Protection Clause, see *id.* at 707, 737-39, 755. This Court's conclusion that segregative intent was not essential in proving a violation of the Equal Protection Clause was based on its understanding of the caselaw from the Supreme Court and the Second Circuit as of 1974. See *id.* at 737-39.

Having found a constitutional violation, this Court ordered that a plan be devised to eliminate the segregation at Mark Twain, and decreed that "[t]he plan shall insure that Mark Twain will not deviate more than 10% from the district-wide average of minority pupils." *Id.* at 756. After reviewing the findings of a special master, this Court adopted the School Board's plan to make Mark Twain a magnet school for gifted students, with the stipulation that the ratio of white to minority students at Mark Twain should be approximately 70/30, which was the approximate district-wide ratio. See *Hart v. Cmty. Sch. Bd. of Brooklyn*, 383 F. Supp. 769, 770-

74 (E.D.N.Y. 1974). Apparently Defendants have modified the goals initially set in the order over the course of time.

### C. Purpose Of Intervention

Movants seek to intervene because challenging the legality of Mark Twain's admissions policy necessarily implicates the propriety of the Defendants' anticipated reliance on this Court's order. Movants will argue, *inter alia*, that the desegregation decree cannot be lawfully invoked by the Defendants to justify the use of racial classifications in the admissions policy, and that the decree should be rescinded or modified. This is so for at least two reasons. First, intervening Supreme Court precedent has undermined this Court's legal conclusion that Mark Twain was unconstitutionally segregated. Indeed, under that precedent, this Court's own factual findings concerning the school officials' lack of segregative intent dictate the conclusion that the Equal Protection Clause was not violated, and so this Court should exercise its continuing equitable jurisdiction to rescind the order. Second, even if the Defendants had acted unconstitutionally in 1974, the vestiges of any such discrimination have been eradicated to the extent practicable, and this Court therefore dissolve the decree.

## III. ARGUMENT

### A. Movants Are Entitled To Intervene As A Matter Of Right Under Federal Rule Of Civil Procedure 24(a)(2)

"In order to establish a right to intervene under Rule 24(a)(2), a would-be intervenor must establish that its application is timely, that it has an interest in the subject of the action, that disposition of the action may as a practical matter impair its interest, and that representation of its interest by existing parties is inadequate." *H. L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 87-88 (2d Cir. 1986); *see also* Fed. R. Civ. P. 24(a)(2). The rule is "'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d

467, 472 (6th Cir. 2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)); *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993); *see also* 7C Charles A. Wright *et al.*, *Federal Practice & Procedure* § 1904 (2d ed. 1986). Movants satisfy all of the criteria of Rule 24(a)(2).

### 1. The motion is timely

The Rule 24 timeliness inquiry must take account of the totality of the circumstances. *See, e.g.*, *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987). "Among the factors to be taken into account to determine whether a motion to intervene is timely are: (a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *Id.*

The circumstances of this case strongly militate in favor of a finding of timeliness. It was only in May 2007 that Movants learned of the Defendants' discriminatory admissions policy, of the policy's relation to this court's desegregation decree, and that the policy could affect their children's ability to attend Mark Twain. The period between when Movants first learned of their interest in this litigation and when they moved to intervene reflects their timely effort to obtain experienced counsel and ascertain whether there was a legal basis for challenging the admissions policy despite the existence of the desegregation decree. See *S.D. Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 563 (D.S.D. 1999). Moreover, this period has caused no conceivable prejudice to the parties. *See Long Island Trucking, Inc. v. Brooks Pharmacy*, 219 F.R.D. 53, 55 (E.D.N.Y. 2003) (finding timeliness despite a one-year delay because the "most important" consideration was whether the delay caused any prejudice). The instant litigation has lain largely dormant for over thirty years, and thus the minor delay between when Movants learned of their interest in this case and when they filed will not in any way adversely affect the parties.

*Compare United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994) (recognizing that late intervention would prejudice the parties by wasting previously conducted settlement negotiations and by delaying the entry of the consent decree).

### 2. Movants have an interest in this action and their absence may impair their ability to protect it

Rule 24(a)(2) requires that the "dispos[ition] of the action may as a practical matter impair or impede the applicant's ability to protect" "an interest relating to the property or transaction that is the subject of the action." "A Rule 24 interest must be significantly protectable[,] and direct as opposed to remote or contingent." *New York*, 820 F.2d at 558 (citing *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)). Freedom from unlawful racial discrimination constitutes a cognizable Rule 24(a)(2) interest. *See Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129-32 (2d Cir. 2001); *see also New York*, 820 F.2d at 558 (recognizing that the putative intervenor "ha[d] a direct and protectable interest in not being foreclosed from employment . . . on account of race").

The Second Circuit's decision in *Brennan* is particularly instructive. White male employees sought to intervene in an employment discrimination suit brought against their employer by the United States on behalf of women and minorities. 260 F.3d at 126-27. The putative intervenors alleged that a proposed settlement agreement would unlawfully discriminate against them by providing women and minorities with promotions and retroactive seniority. *Id*. The district court denied intervention. *Id.* at 128. The Second Circuit reversed. *Id.* at 128-33. The court of appeals held that the putative intervenors had a Rule 24(a)(2) interest in avoiding allegedly unlawful racial and gender discrimination caused by the agreement (regardless of whether they otherwise had a legally protectable interest in government employment or seniority status). *See id.* at 129-32.

Movants likewise have a protectable interest in being considered for admission to Mark Twain without being discriminated against on the basis of race. That interest plainly "relat[es] to the property or transaction which is the subject of th[is] action." And because the Defendants are likely to invoke the desegregation decree entered in this case in defense of their discriminatory admissions policy, it is self-evident that this litigation "may as a practical matter impair or impede" Movants' ability to protect their interest. *See Brennan*, 260 F.3d at 132 (finding unnecessary any distinct analysis of the "impair or impede" clause once the putative intervenors were held to have had a protectable interest implicated by the settlement agreement). Movants' attempt to prove that the desegregation decree cannot be lawfully invoked by Defendants to justify the use of express racial classifications, and that the decree thus should be rescinded or modified, may be impeded if Movants are not allowed to participate in the action in which the decree was issued.

### 3. The existing parties inadequately represent Movants' interest

Rule 24(a)(2)'s inadequate representation requirement "is satisfied if the applicant shows that representation 'may be' inadequate, and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Once again, Second Circuit precedent strongly supports the conclusion that Rule 24(a)(2) is satisfied here. Indeed, it is self-evident that the Defendants—who implement the very discriminatory admissions policy by which the Movants are aggrieved—do not adequately represent the Movants' interests.

In *New York*, for example, the Second Circuit recognized that once the plaintiff in an employment discrimination suit had succeeded in obtaining a final order imposing a racial quota for hiring purposes, the parties did not adequately represent the putative intervenor who objected to the racial quota, since the plaintiff "ha[d] an interest in the continued use of the quota" and the

- 8 -

employer "ha[d] adopted new hiring measures that it ha[d] no incentive to change." 820 F.2d at 558; *see also Brennan*, 260 F.3d at 133 (holding that the parties would not adequately represent the intervenors, since an employer may have an "interest in bringing [employment discrimination] litigation to an end by settlements involving the displacement of employees who are not parties to the action" and might thus "behave like a stakeholder rather than an advocate"). Here, the Plaintiffs lack any obvious interest in litigating to change an admissions policy that did not tangibly harm them, and the Defendants, despite having ample legal grounds, have not yet attempted to escape three decades of judicial supervision over Mark Twain. The "minimal" showing that the current parties "may" inadequately represent Movants' interests is readily satisfied.

### B. Permissive Intervention Should Be Granted Under Federal Rule Of Civil Procedure 24(b)(1)(B)

In the alternative, Movants should be granted permission to intervene. Permissive intervention may be granted when a timely application is filed and the applicant "has a claim or defense that shares with the main action a common question of law or fact." See Fed. R. Civ. P. 24(b)(1)(B). Once those minimal requirements are met, "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting former Fed. R. Civ. P. 24(b)(2)); *see also* Fed. R. Civ. P. 24(b)(3). For the reasons discussed above, this motion is timely. The remaining criteria of Rule 24(b) are also satisfied.

#### 1. Movants' claim and the main action have common questions of law

Movants' claim raises legal questions that are common to—and indeed, inextricably intertwined with—those in this action. At the heart of both claims is the propriety and legality of

- 9 -

employing mandatory racial classifications to determine the composition of Mark Twain's student body.

Movant's claim will present two questions of law directly pertaining to this action. First, there is the question whether Mark Twain was ever unconstitutionally segregated. When this Court adjudicated that question against the Defendants in 1974, it expressly and repeatedly found a lack of segregative design or purpose. See *Hart*, 383 F.3d at 707, 721, 755. Whether or not Mark Twain could nevertheless have been held unconstitutionally segregated based on the state of the law in 1974, see *id.* at 737-39 (discussing appellate precedent supporting this Court's conclusion, such as *Palmer v. Thompson*, 403 U.S. 217 (1971), and *Wright v. Council of City of Emporia*, 407 U.S. 451 (1972)), it is now black-letter law that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (reaffirming the landmark holding in *Washington v. Davis*, 426 U.S. 229 (1976), and rejecting the "contrary indications" in *Palmer* and *Wright*); *see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("'Discriminatory purpose'" requires a showing that the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiably group."). Second, even if Defendants had engaged in unconstitutional discrimination prior to 1974, Movants will raise the question whether "'the vestiges of past discrimination ha[ve] been eliminated to the extent practicable,'" *Freeman v. Pitts*, 503 U.S. 467, 492 (1992) (quoting *Bd. of Educ. of Okla. City Pub. Schs. v. Dowell*, 498 U.S. 237, 248 (1991)), so that the Defendants can no longer justify their use of racial classifications based on a remedial theory, *see Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738, 2752 (2007).

Both of the questions of law described above are common—indeed, integral—to this litigation, so Rule 24(b)(1)(B) is satisfied. As for the first question, this Court retained jurisdiction pursuant to normal equity practice, *Hart*, 383 F. Supp. at 776, and has the power to modify an injunctive decree when circumstances of law or fact have changed since the issuance of the decree, see *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437 (1976). As for the second question, the Supreme Court has admonished that a school desegregation decree is "not intended to operate in perpetuity," *Dowell*, 498 U.S. at 248, and that a district court has a "duty to return the operations and control of schools to local authorities" once the "school district has attained the requisite degree of compliance," *Pitts*, 503 U.S. at 489-90. The three-decade-old desegregation decree entered in this litigation should be dissolved because the school district has "'complied in good faith . . . since it was entered, and [because] the vestiges of past discrimination ha[ve] been eliminated to the extent practicable.'" *Id.* at 492 (quoting *Dowell*, 498 U.S. at 249-50).

Thus, in a case presenting virtually identical facts to those involved here, the district court held that permissive intervention was warranted. See *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 179 F.R.D. 505, 506-09 (W.D.N.C. 1998) (granting permission to parents seeking to intervene in a school desegregation case in order to prove that the vestiges of prior discrimination had been eliminated such that the continued use of race-based admissions policies violated their children's constitutional rights).

**2.      Intervention will neither delay nor prejudice the adjudication of the rights of the existing parties**

The time has long since passed when it was appropriate to describe the *Hart* decree as a "'temporary measure.'" *Pitts*, 503 U.S. at 489 (quoting *Dowell*, 498 U.S. at 247). Intervention thus will actually revive, rather than delay, this moribund litigation, and enable this Court to

fulfill its "duty to return the operations and control of schools to local authorities." *Id.* And Intervention will not prejudice the adjudication of the rights of the existing parties, since all that Movants seek is for that very adjudication to take place at long last.

## IV. CONCLUSION

For the reasons stated herein, Movants respectfully ask this Court to grant their motion to intervene.

                                    Respectfully submitted,

                                    /s/
                                    Michael E. Rosman
                                    CENTER FOR INDIVIDUAL RIGHTS
                                    Suite 300
                                    1233 Twentieth Street, NW
                                    Washington, DC  20036
                                    202-833-8400

                                    Michael A. Carvin
                                    Shay Dvoretzky
                                    JONES DAY
                                    51 Louisiana Avenue, NW
                                    Washington, DC  20001
                                    202-879-3939

                                    Rosemarie Arnold
                                    LAW OFFICES OF ROSEMARIE ARNOLD
                                    1386 Palisade Avenue
                                    Fort Lee, New Jersey  07024
                                    201-461-1111

January 14, 2008

Certificate of Service

I certify that I served the foregoing Memorandum of Law in Support of Motion to Intervene to the following individuals by mail on January 14, 2008.

Michael Cardozo
Corporation Counsel of the City of
   New York
100 Church St.
New York, NY 10007

Muriel Kerzer
315 8th Avenue
Apartment 21 D
New York, NY 10001

Robert M. Couch
General Counsel
U.S. Department of Housing and
   Urban Development
451 7th Street S.W.
Washington, DC 20410

Nathaniel R. Jones
Blank Rome
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202

James I. Meyerson
396 E. Broadway
New York, NY 10002

Roy L. Williams
Chair of the NAACP Special Contribution
   Fund
4805 Mt. Hope Drive
Baltimore MD 21215

Elliot Hoffman
Beldock Levine & Hoffman LLP
99 Park Avenue, Suite 1600
New York, NY 10016

Thomas N. Rothschild
16 Court Street, Suite 2007
Brooklyn, NY 11241

Brooklyn Legal Services
1455 Myrtle Ave
Brooklyn, NY 11237

/s/
Michael E. Rosman